David M. Friedman (DFriedman@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Jeffrey R. Gleit (JGleit@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC.,** *et al.,*[1] | **Case No. 11-10614 (MG)** |
| **Debtors.** | **(Jointly Administered)** |
| **BORDERS, INC. and BORDERS PROPERTIES, INC.,** | Adv. Proc. No. [_____] |
| **Plaintiff,** | |
| **vs.** | |
| **NEXT JUMP, INC.** | |
| **Defendant.** | |

**<u>COMPLAINT</u>**

Borders, Inc. ("<u>Borders</u>" or "<u>Plaintiff</u>") and Borders Properties, Inc. ("<u>Borders</u>

<u>Properties</u>"), as debtor and debtor-in-possession (the "<u>Plaintiffs</u>"), by and through their

undersigned counsel, allege as follows:

---

[1]   The Debtors in these cases (the "Debtors"), along with the last four digits of each Debtor's federal tax
identification number, are:  Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders,
Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders
Online, LLC (8996); and BGP (UK) Limited.

## PRELIMINARY STATEMENT[2]

This is an action for breach of contract, misappropriation of trade secret, violations of the Lanham Act and common law trademark infringement, turnover of an estate asset, violations of the automatic stay, unjust enrichment, and for injunctive relief protecting the Debtors' intellectual property rights and BRP Customer List.[3]  As set forth below, Debtor Borders, Inc. and Next Jump entered into a pre-Commencement Date business arrangement whereby Borders engaged Next Jump as a service provider to operate a Borders website, bordersrewardsperks.com, and, thereby, Next Jump gained access to a portion of Borders customer list.

Next Jump violated that agreement by soliciting Borders' customers to join a website similar to bordersrewardsperks.com, OO.com, but owned and operated by Next Jump, in violation of the agreement.  Borders explicitly told Next Jump to stop emailing Borders' customers, and terminated the agreement.  Despite the fact that Next Jump was expressly advised of the termination the Next Jump Agreement, Next Jump kept that portion of Borders' customer list in its possession and continues to email Borders' customers stating that "Borders' Rewards Perks is now OO.com," Next Jump's website.  Moreover, Next Jump is infringing Border's trademark and trade dress by improperly using Borders' trademarks in email communications, by continuing to operate the bordersrewardsperks.com website, and by using Borders' trademarks on Next Jump's website OO.com without authorization.

By its actions, Next Jump is causing irreparable harm to the Debtors' estates and creditors at a crucial point in these chapter 11 cases.  Specifically, the Debtors are in the process of selling

---

[2]    Capitalized terms not defined in the Preliminary Statement are defined below.

[3]    No Social Security numbers, driver's license numbers, or financial institution information were collected by the Debtors in connection with Borders Rewards Perks program, nor was any such information provided to Next Jump in connection with the Next Jump Agreement.

their intellectual property assets (the "Intellectual Property").  Next Jump's actions against the

estates are tantamount to theft of that portion of Borders' customer list in Next Jump's control

and the goodwill embodied in Borders trademarks and brand, and have already caused and

continue to cause significant harm to the Debtors' estates and creditor recoveries.  As a result, the

Debtors file this Complaint seeking injunctive relief as well as damages arising from claims for

misappropriation, unjust enrichment, common law trademark infringement, violations of the

Lanham Act, and intentional and willful violations of Sections 362 and 542(a) of the Bankruptcy

Code.

Filed concurrently herewith are Plaintiffs' Memorandum of Law in Support of Plaintiffs'

Request for a Temporary Restraining Order and Preliminary Injunction Against Next Jump, Inc.;

the Declaration of Jeffrey R. Gleit, dated August 31, 2011; a proposed Order To Show Cause and

Notice Fixing Hearing and Objection Deadline To Consider the Request of the Plaintiffs for a

Temporary Restraining Order and Preliminary Injunction Against Next Jump, Inc.; a proposed

Order Approving Temporary Restraining Order; and a proposed Order Approving Preliminary

Injunction.

## <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)

and 1334(a) because the claims asserted in this adversary proceeding arise in the

above-captioned chapter 11 bankruptcy case or arise under title 11.

2.      This proceeding is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2).

3.      Venue is proper in the United States Bankruptcy Court for the Southern District

of New York pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

4.      Plaintiff Borders, Inc., a Delaware corporation with its principal place of business at 100 Phoenix Drive, Ann Arbor, Michigan 48108, is one of the Debtors in the above-referenced chapter 11 case.

5.      Plaintiff Borders Properties, Inc., a Delaware corporation with its principal place of business at 100 Phoenix Drive, Ann Arbor, Michigan 48108, is one of the Debtors in the above-referenced chapter 11 case.[4]

6.      Upon information and belief, defendant Next Jump, Inc. ("Next Jump") is a Massachusetts corporation with offices at 261 Fifth Avenue, New York, New York 10016, and as described below is a former contract counterparty with Borders, Inc.  Next Jump owns and operates the website OO.com.

## FACTS

### A.      The Chapter 11 Case

7.      On February 16, 2011 (the "Commencement Date"), each of the Debtors, including the Plaintiffs, commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8.      On June 30, 2011, the Debtors filed their *Motion for an Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Approving the Sale of Substantially All of the*

---

[4]     Borders Properties, Inc. was merged into Borders, Inc. on June 28, 2011.

*Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and the Assumption and Assignment of Executory Contracts and Unexpired Leases Related Thereto, (II) Approving the Bidding Procedures and Break-Up Fee, and (III) Granting Related Relief* [Docket No. 1130] (the "Sale Motion").  On July 14, 2011, the Court entered the *Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure Approving Sale Procedures in Connection with the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests* [Docket No. 1253], which approved sales procedures for the sale of substantially all of the Debtors' assets, but specifically excluded, among other assets, their intellectual property and related interests.  On July 21, 2011, the Court entered the *Order Approving Agency Agreement, Store Closing Sales and Related Relief* [Docket No. 1377], pursuant to which the Court authorized the Debtors to enter into the Agency Agreement (as modified, the "Agency Agreement") with Hilco Merchant Resources, LLC, SB Capital Group, LLC, Tiger Capital Group, LLC, Gordon Brothers Retail Partners, LLC and Great American Group, LLC.  Pursuant to the Agency Agreement, the Debtors are now in the process of liquidating all of their store locations.[5]

9.    On July 27, 2011, the Debtors filed the *Debtors' Motion for Orders Pursuant to Sections 332, 363, 365 and 104 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedures (I) Approving Bidding Procedures With Respect to Sale of Certain IP Assets, Including Expense Reimbursement for a Stalking Horse Bidder, Setting the Sale Hearing Date, and Appointing a Consumer Privacy Ombudsman; and (II) Approving and Authorizing the Sale of IP assets to the Highest and Best Bidder Free and Clear of All Liens,*

---

[5] The Debtors had previously closed approximately 226 of their retail stores during the chapter 11 cases pursuant to the Court's February 18, 2011 Order Approving Agency Agreement, Store Closing Sales and Related Relief Docket No. 91] and the Debtors' March 25, 2011 Notice of (A) Designation of Final Put Option Store List and (B) Filing of Agency Agreement for Store Closing Sales at Put Option Stores [Docket No. 473].

*Interests, Claims and Encumbrances and the Assumption and Assignment of Certain Related*

*Executory Contracts and Waiting the Requirements of Bankruptcy Rules 6004(h) and 6006(d)*

(the "IP Sale Motion") [Docket No. 1401].  Pursuant to the IP Sale Motion, the Debtors sought

entry of an order scheduling an auction and sale hearing for certain of its intellection property

assets (the "IP Assets") including, among other things, the Debtors' membership lists and

customer information, including email addresses.  Next Jump is in possession of a portion of

Debtor's membership lists and customer information, including email addresses (that portion of

Debtor's customer information in Next Jump's control is referred to collectively herein as the

"BRP Customer List" or "Explicit Sponsor Enrollee Data").  The BRP Customer List was

compiled from customer information obtained via the Debtors' Borders Rewards and Borders

Rewards Plus members, via a program that provided members with numerous benefits, including

coupons and reduced or free shipping on purchases.  The Debtors' BRP Customer List and

associated goodwill is one of the most valuable components of the Debtors' Intellectual Property.

10.    Bids are due on September 8, 2011 for the Intellectual Property.  The auction for

the Intellectual Property is scheduled for September 14, 2011 and the sale hearing for the

Intellectual Property is currently scheduled for September 20, 2011.

**B.    The Next Jump Agreement**

11.    On July 2, 2007, Borders and Next Jump entered into that certain agreement titled

Borders Rewards Perks Program (the "Next Jump Agreement").  Pursuant to the Next Jump

Agreement, Next Jump agreed to operate a Borders website, bordersrewardsperks.com, as a

service provider to Borders. The Borders Rewards Perks website was established to provide

rewards and loyalty perks (the "Borders Rewards Perks") from third-party vendors to certain

Borders Rewards and Borders Rewards Plus members on the BRP Customer List (the "Next

Jump Enrollees") via email who opted in to the Borders Rewards Perks program.  Persons on the

BRP Customer List could opt out from receiving emails from Next Jump at any time.

12.    Article III of the Next Jump Agreement provided for the payment of commissions

to Borders from Next Jump who was paid commissions from its merchants.  A copy of the Next

Jump Agreement is attached Exhibit A to the Declaration of Jeffrey R. Gleit, dated August 31,

2011 and filed herewith [hereinafter, "Gleit Decl. Ex. ___."].

13.    Pursuant to Section 2.01 of the Next Jump Agreement, the "Launch Date" for the

Borders Rewards Perks program was August 1, 2007.  Section 5.01 of the Next Jump Agreement

provided for it to terminate thirty-six (36) months from the Launch Date.  Thus, on or before

August 1, 2010, the Next Jump Agreement expired by its own terms.  Thereafter, Borders and

Next Jump continued to engage in activities under the Next Jump Agreement on a "terminable at

will" basis, while attempting to negotiate a new contract.

14.    Next Jump agreed to operate a Borders website, bordersrewardsperks.com, as a

service provider to Borders, using the Borders trademark and trade dress.  However, the Debtors'

trademarks, service marks, and trade dress would continue to be owned by the Debtors.

Specifically, Section 2.05 provides:

Section 2.05    Enrollment Process and Operation.

(b)    Next Jump shall design, establish, maintain, operate, host,
and secure a website portal for Sponsor Enrollees to view and
access Merchant Offers that Next Jump makes available over the
internet, as described in Section 2.06 below ("Sponsor Portal").
All elements of the Sponsor Portal are subject to Sponsor's
approval, per Section 4.02(e) herein.  ***With respect to the Sponsor
Portal, Borders owns those elements which reflect the look, feel
and design of the Sponsor Portal, including all copyrights and
trade dress rights therein, as well as all pre-exiting intellectual
property and the intellectual property it independently contributes
to the Sponsor Program.***  Next Jump will place a link on the
Sponsor Portal and on each Sponsor-branded web page within the
Sponsor Portal, that will connect to a web page providing a
disclosure regarding links to non-Borders merchants which states

the following: "If you click on any third party merchant offer, any transactions undertaken or information you submit will be subject to the privacy policy of the resulting merchant's website(s). For more information, see resulting website's privacy policy."

(emphasis added).

15.     Most importantly for the current dispute, all customer information, emails,

trademarks and trade dress remained the property of Borders. Specifically, Section 4.01 of the

Next Jump Agreement provides:

> Section 4.01 <u>Ownership and Use of Explicit Sponsor Enrollee Data and Inferred Sponsor Enrollee Data</u>.
>
> (a)     The Explicit Sponsor Enrollee Data shall be ***owned exclusively by [Borders] and shall be used by Next Jump only for purposes of the [Borders] Program.*** All such Explicit Sponsor Enrollee Data described above shall be made available to [Borders] at its request no more frequently than monthly. For the avoidance of doubt, Next Jump cannot share any Explicit Sponsor Enrollee Data with any merchants or any other parties, and such information is deemed the confidential information of [Borders]. ***Upon termination, all Explicit Sponsor Enrollee Data shall revert to [Borders] and shall not be stored or used by Next Jump in any manner.***
> (b)     Next Jump exclusively shall own Inferred Sponsor Enrollee Data whether individually, aggregated or other wise reported. Next Jump shall use Inferred Sponsor Enrollee Data only for purposes of fulfilling its obligations under this Agreement or for improving Next Jump's systems, shall only connect any Inferred Sponsor Enrollee Data to any personal information of any Potential Enrollee or Sponsor Enrollees for purposes of fulfilling its obligations under this Agreement, and shall not use or store the Inferred Sponsor Enrollee Data in any way that is tied to Borders and/or Borders' customers in any manner. Further, Next Jump will not share any Inferred Sponsor Enrollee Data, or any other aggregate data compiled through the Sponsor Program, with any third party unless the Inferred Sponsor Enrollee Data is aggregated with Other Sponsors' Inferred Sponsor Enrollee Data.

(emphasis added).

16.     Further, Borders retained ownership of its trademark and trade dress.

Specifically, Section 4.02 of the Next Jump Agreement provides in relevant part:

Section 4.02 <u>Ownership and Approval of Sponsor Program Materials/Intellectual Property</u>.

(a)    Notwithstanding anything to the contrary herein, ***each party shall own all of its pre-existing intellectual property*** and the intellectual property it independently contributes to the Sponsor Program. Subject to Section 4.02(b) below, as between the parties hereto, each party shall own any improvements or modifications it makes to its respective pre-existing and independently contributed systems, software, and processes.  With respect to the Sponsor Portal, Borders owns those elements which reflect the look, feel and design of the Sponsor Portal, including all copyrights and trade dress rights therein.  Next Jump owns or is licensed to use all other aspects of the Sponsor Portal.  As to intellectual property not applying to party's pre-existing systems, software or processes, ownership shall be allocated in accordance with inventorship, subject to Section 4.02(b) below.

. . . .

(c)    ***Each party shall cooperate and take reasonable commercial actions with respect to the protection of the other party's intellectual property.***

(emphasis added).

17.    Pursuant to Section 4.03 of the Next Jump Agreement, Borders granted Next Jump a non-exclusive, limited license to use Borders' name, logo and mark during the term of the Next Jump Agreement, for the sole purpose of effectuating the Agreement.  Specifically, Section 4.03 provides:

Section 4.03 <u>Intellectual Property</u>. During the Term, Sponsor grants to Next Jump the non-exclusive, limited right to use the name, logo and marks of Sponsor ("Sponsor Marks") ***in all manners necessary to carry out the obligations of Next Jump set forth in this Agreement.  The Sponsor Marks, and all goodwill therein, shall remain the sole exclusive property of Sponsor, and any and all rights therein, including, but not limited to, all goodwill arising from the use by Next Jump of the Sponsor Marks pursuant to the provisions of this Agreement shall inure to the benefit of and be the sole exclusive property of Sponsor.***
Next Jump may disclose Sponsor's identity as the owner of the Sponsor Program for whom Next Jump is negotiating for services. Next Jump may use Sponsor's logo in Marketing Materials, with prior written approval by Sponsor. . . .

18.    The Next Jump Agreement explicitly required that Next Jump return to Borders,

and purge from its systems, the BRP Customer List upon termination of the Agreement.

Section 5.03 of the Next Jump Agreement provides in pertinent part:

> Section 5.03 <u>Termination Procedures</u>.
>
> (a)    In any situation described in Section 5.02(a) above, the breaching party will bear the costs of (i) reasonable email notification to Sponsor Enrollees of termination of the Sponsor Program (unless Sponsor continues the Sponsor Program without Next Jump), and (ii) Sponsor Program fee reimbursement to Sponsor Enrollees consistent with terms disclosed to Sponsor Enrollees for such event.  All costs will be borne by the party that terminates the Sponsor Program pursuant to Section 5.02(b).  If the Sponsor Program terminates naturally (*e.g.*, after it's Term), both parties will share all costs.
>
> (b)    Next Jump shall be responsible for providing notification to Next Jump Merchants of termination of Sponsor Program.
>
> (c)    Subject to Article 4 above, within thirty (30) days after termination of this Agreement, ***each party shall return to the other all of the other's confidential and/or proprietary information and intellectual property and shall either return to the other party or securely purge its files and systems of all such information at the other party's request***. . . .

(emphasis added).

19.    The Agreement made clear that Next Jump could only use Borders' BRP

Customer List and intellectual property in connection with the Borders Rewards Perks Program.

Section 2.03(b) of the Next Jump Agreement states:

> (b)    The [Borders] Program shall have [Borders] branding and all activities by Next Jump hereunder shall, as to the Potential Enrollees and Sponsor Enrollees, appear as being provided by [Borders], including, without limitation, any emails sent by Next Jump and the Sponsor Portal. Next Jump hereby grants [Borders] a license to use any copyrighted materials submitted by Next Jump to Sponsor for use in marketing and operating the [Borders] Program ***in connection with such marketing and operation.*** During the term, [Borders] hereby grants Next Jump a non-exclusive license to use all intellectual property of Sponsor provided by Sponsor to Next Jump ***contained in pre-approved***

10

> *solicitation, marketing and support materials developed/created by Next Jump for the Sponsor Program for purposes of marketing and operating the [Borders] Program pursuant to this Agreement.*

(emphasis added).

20.    Moreover, Next Jump was required to obtain Borders' prior written approval for all marketing activities, including the emails sent to Borders' customers.  Section 4.02(e) of the Next Jump Agreement states:

> (e)    Approvals. *All materials identified in Section 2.03, the Sponsor Portal, the [Borders] Program Terms and Conditions, and all graphics, features, functionalities, content and other elements of the marketing of the [Borders] Program to be developed by or on behalf of Next Jump hereunder, shall be subject to Borders' prior written approval.* Next Jump shall seek Borders' input and written approval including by e-mail at each stage of development of the materials and the Sponsor Portal and give Borders sufficient time to review the work to meet the scheduled completion dates. If Borders disapproves or rejects any material provided to it, Next Jump shall promptly revise the material and resubmit for Borders' approval. *In no event will Borders' approval of any elements of or other materials created or developed by Next Jump hereunder relieve Next Jump of any of its responsibilities under this Agreement. . .*

(emphasis added).

21.    The provisions governing ownership of the BRP Customer List and intellectual property survived the termination of the Next Jump Agreement.  Next Jump Agreement § 6.15.

## C.    The Borders Trademarks and Service Marks

22.    The Debtors, including the Plaintiffs, have conducted business under the trade names, trademarks, and service marks BORDERS and BORDERS REWARDS.

23.    Plaintiff Borders Properties, Inc. is the owner of numerous United States registrations of trademarks and service marks comprising the words BORDERS and BORDERS REWARDS, including:

(a)    U.S. Registration No. 4,003,750 "BORDERS REWARDS +";

(b)      U.S. Registration No. 4,003,748 for "BORDERS REWARDS PLUS";

(c)      U.S. Registration No. 3,158,744 for "BORDERS OUTLET";

(d)      U.S. Registration No. 3,157,981 for "BORDERS REWARDS";

(e)      U.S. Registration No. 3,599,990 for "BORDERS.COM";

(f)      U.S. Registration No. 2,980,661 for "BORDERS BOOKS MUSIC MOVIES
         CAFÉ";

(g)      U.S. Registration No. 3,009,250 for "BORDERS EXPRESS" (stylized);

(h)      U.S. Registration No. 2,224,415 for a "BORDERS BOOKS MUSIC CAFÉ"
         design;

(i)      U.S. Registration No. 1,827,878 for "BORDERS BOOKS & MUSIC";

(j)      U.S. Registration No. 1,792,079 for "BORDERS"; and

(k)      U.S. Registration No. 1,187,210 for "BORDERS BOOK SHOP".

Gleit Decl. Exs. B-1 through B-11.

24.      Plaintiff Borders Inc. (as well as other of the Debtors) is a licensee of these and

other BORDERS- and BORDERS REWARDS-formative trademarks.

25.      By reason of more than forty years of continuous and substantially exclusive use,

as well as the Debtors' expenditure of tens of millions of dollars in advertising and promotion,

the BORDERS and BORDERS REWARDS marks have come to be famous and to symbolize

extensive goodwill identifying the Debtors.

26.      In addition to the above-listed registrations, the Debtors have enforceable

trademark rights in other BORDERS- and BORDERS REWARDS-formative trademarks and

related trade dress, including the trademarks BORDERS REWARDS PERKS and BORDERS

REWARDS PERKS PLUS, as a result of the Debtors' continuous and substantially exclusive use

of those marks and expenditures in advertising and promotion of those marks.  Collectively, the

Debtors' registered and unregistered trademarks, service marks, and trade dress are referred to herein as the "<u>BORDERS Marks</u>" or "<u>Sponsor Marks</u>."

27.     The BORDERS Marks and BRP Customer List are property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code.

**D.      Next Jump's Misappropriation of the Customer Information
         and Infringement of Trademark**

28.     Next Jump owns OO.com, which is a website that advertises coupons and other specials for certain retailers and businesses.

29.     Upon information and belief, on or around July 22, 2011, Next Jump sent an unauthorized email  (the "<u>July 22 Email</u>") to persons on the BRP Customer List, in blatant violation of the Next Jump Agreement.  That email falsely stated that "Borders Rewards Perks has partnered with OO.com . . . ."  Next Jump's misconduct was mistakenly imputed to the Debtors by at least one of Borders' customers as a result.  Gleit Decl. Ex. C.  According to representations made to Borders by Next Jump, hundreds of thousands of Borders' customers signed up with OO.com as a result of this unauthorized and prohibited solicitation.

30.     Immediately upon receiving notice of Next Jump's conduct, Daniel Angus, an employee of the Debtors, advised Next Jump in a telephone call to cease using the BRP Customer List to transmit information to the persons on the BRP Customer List.

31.     Upon information and belief, on August 25, 2011, Next Jump sent another email (the "<u>August 25 Email</u>") to persons on the BRP Customer List, which email included links to the OO.com website, again in violation of the Next Jump Agreement.  Gleit Decl. Ex. D.

32.     Upon information and belief, Next Jump placed certain of the BORDERS Marks on its OO.com website.  Gleit Decl. Ex. E.  On information and belief, this has caused actual consumer confusion as to the source of goods and services offered by Next Jump in connection with the BORDERS Marks.  A search for "Borders" on OO.com returns a link to a "BORDERS"

branded online store.  *Id.* Ex. F.  In addition, Next Jump placed the false and misleading statement that Borders Rewards Perks "will be migrating" to OO.com on the bordersrewardsperks.com website.  *Id.* Ex. G.

33.     Plaintiffs did not consent to either the July 22 Email or the August 25 Email sent by Next Jump, or any other such email sent by Next Jump in violation of the Next Jump Agreement or after the termination of the Next Jump Agreement; did not consent to the use of the BORDERS Marks on the OO.com website; and did not approve of or consent to the statement that Borders Rewards Perks is now OO.com.

34.     Upon information and belief, Next Jump willfully and maliciously misused the BRP Customer List and the BORDERS Marks to the disadvantage of the Debtors and their creditors.

35.     Upon information and belief, Next Jump has adopted the BORDERS Marks in bad faith and with specific intent to appropriate goodwill associated with the BORDERS Marks.

36.     The Next Jump Agreement was terminated no later than August 26, 2011, when the Debtors sent a cease-and-desist letter to Next Jump.  Borders demanded that Next Jump "immediately cease and desist" from using the BRP Customer List and the Sponsor Marks in any other manner whatsoever.  The letter further stated that Borders is the exclusive owner of the BRP Customer List and that Next Jump may not use or share the BRP Customer List.  Borders demanded that Next Jump immediately provide a copy to Borders of all customer information of Borders in the possession of Next Jump or its agents, including, but not limited to, the BRP Customer List.  Borders requested that Next Jump immediately purge its files and systems of the BRP Customer List and provide a written acknowledgement to Borders that Next Jump has purged its files and systems of all such information.  Borders further requested an accounting of damages caused by Next Jump's breach of the Next Jump Agreement.

14

37.    On August 30, 2011, Next Jump contacted the Debtors and informed them that Next Jump believes that they have the right to retain information relating to approximately 500,000 of Borders' customers who allegedly "converted" to OO.com in response to Next Jump's unauthorized solicitation of persons on the BRP Customer List.  However, any such information was obtained in violation of the Next Jump Agreement, and is therefore the property of Borders.

38.    As of the date hereof, Next Jump, through OO.com, continues to use the BORDERS Marks without authorization.  In addition, Next Jump continues to operate the bordersrewardsperks.com website, which includes many of the BORDERS Marks, without authorization.  Moreover, the bordersrewardsperks.com website falsely and misleadingly states that, "[u]nfortunately Borders Rewards Perks is no longer accepting new registrations and will be migrating to OO.com."  Gleit Decl. Ex. G (emphasis added).

39.    At least five potential bidders became aware of Next Jump's conduct because of Next Jump's unauthorized solicitations.  On August 30, 2011, one potential bidder for the Debtors' assets told the Debtors' agent that Next Jump's conduct may cause that potential bidder to lower its valuation of the Debtors' assets.

## COUNT I – INJUNCTIVE RELIEF

40.    Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated herein by reference as if set forth fully.

41.    Plaintiffs assert that there is a danger of imminent, irreparable harm to the Debtors' estates as a result of Next Jump's misappropriation of the BRP Customer List and infringement of the BORDERS Marks.

42.    Plaintiffs assert that there is a reasonable likelihood of success on the merits for the underlying claims.

43.    Plaintiffs assert that the balancing of the relative harms weighs in favor of Plaintiff.

44.    Plaintiffs assert that the public's interest in protecting against the misappropriation of customer information and trademark infringement favors granting of the relief sought herein.

45.    Plaintiffs have suffered, and will continue to suffer irreparable harm, if Next Jump does not (i) cease and desist from emailing persons on the BRP Customer List; (ii) cease and desist from emailing persons who signed up with OO.com as a result of Next Jump's unauthorized solicitation of persons on the BRP Customer List; (iii) return the BRP Customer List to Borders or purge the BRP Customer List from Next Jump's systems; and (iv) cease and desist from infringing the BORDERS Marks.

46.    By reason of the foregoing, Plaintiffs are entitled to injunctive relief enjoining Next Jump from using the BRP Customer List and the BORDERS Marks.

**COUNT II – COMMON LAW MISAPPROPRIATION OF TRADE SECRET**

47.    Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated herein by reference as if set forth fully.

48.    Plaintiff Borders provided Next Jump access to the BRP Customer List pursuant to the Next Jump Agreement, which has been terminated.

49.    The BRP Customer List was supposed to be used only for the purposes set out in the Next Jump Agreement, but instead was improperly used by Defendant.

50.    The BRP Customer List was supposed to be returned to Borders or purged by Next Jump upon the termination of the Next Jump Agreement but the Defendant has not done so.

51.    The BRP Customer List contained customer information, including email addresses.  The BRP Customer List was compiled by the Plaintiffs and other Debtors and was

unknown to the general public or to others in the Debtors' industry.  This information is a

valuable property interest of the Debtors.

52.    Upon information and belief, Defendant is using the information contained in the

BRP Customer List for its sole economic benefit without authorization.

53.    Defendant has used the BRP Customer List and information in those lists without

the express or implied consent of Borders.  This act of misappropriation has damaged Plaintiffs

and their business.

54.    Defendant has used the BRP Customer List and information contained on the list

in an effort to steal revenue from the Plaintiffs for Defendant's own financial gain.

55.    By reason of the above and as a direct and proximate result, Plaintiffs have been

damaged in an amount to be determined at trial, including lost profits from the sale of the BRP

Customer List and/or Defendant's profits, other gains and advantages obtained as a result of

Defendant's wrongful acts, plus interest and attorneys' fees in bringing this action.

56.    Defendant's conduct also threatens Plaintiffs with irreparable harm for which it

has no adequate remedy at law.

## COUNT III – BREACH OF CONTRACT

57.    Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated

herein by reference as if set forth fully.

58.    Plaintiff Borders, Inc. and Defendant Next Jump are parties to the Next Jump

Agreement, certain provisions of which are currently valid and enforceable.

59.    The Plaintiff has performed, as required, its obligations under the Next Jump

Agreement.

60.     Pursuant to Section 6.15 of the Next Jump Agreement, "[a]ll provisions in Section 6 of the Agreement and provisions regarding Indemnification, Ownership, and Compensation . . . shall survive the termination of the Next Jump Agreement."

61.     Although Section 2.03(b) allows Defendant to send emails appearing to be provided by Borders, such emails must be pre-approved by Borders pursuant to Section 4.02(e), and be in furtherance of the Borders Program as defined in the Next Jump Agreement. Defendant has breached Sections 2.03(b) and 4.02(e) of the Next Jump Agreement by sending unauthorized emails containing the Plaintiffs' intellectual property that were not pre-approved solicitations and were in furtherance of Next Jump's own personal business objectives.

62.     The Defendant is also in breach of Section IV of the Next Jump Agreement, dealing with Ownership, for its continuing unauthorized use of the BRP Customer List and the BORDERS Marks, both before and after termination of the agreement.

63.     Defendant's breaches have directly harmed Plaintiffs and will continue to do so, to the detriment of the Debtors' estates.  Defendant's continued unauthorized use of the BRP Customer List and the BORDERS Marks have harmed and will continue to harm the Debtors' business reputation and goodwill and the Plaintiffs' ability to sell their assets for the best possible price and maximize the recovery for their creditors.

64.     By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, including interest, costs, and attorneys' fees.

65.     The Court should compel the Next Jump to perform it obligations under the contract and purge from Next Jump's systems any and all information received from Borders or derived from its unauthorized solicitations of persons on the BRP Customer List.

## COUNT IV- UNJUST ENRICHMENT

66.     Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated herein by reference as if set forth fully.

67.     Defendant intentionally and without authorization retained and utilized the BRP Customer List and information contained therein for its own economic benefit.

68.     As a result, Defendant unjustly benefited from Borders' efforts and expense in creating the BRP Customer List.

69.     Defendant should disgorge any benefits which they have unjustly obtained from Borders.

## COUNT V- COMMON LAW INFRINGEMENT

70.     Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated herein by reference as if set forth fully.

71.     The BORDERS Marks are arbitrary and inherently distinctive.

72.     By reason of Debtors' extensive advertising and promotional efforts and by the enthusiastic reception of the Borders name, the BORDERS Marks have come to symbolize highly valuable goodwill and selling power in the field of book and other forms of media selling.

73.     Defendant's use in commerce of the BORDERS Marks is likely to cause confusion, to cause mistake, or to deceive.  Defendant's conduct has already caused actual consumer confusion as to the source of goods and services offered by Next Jump in connection with the BORDERS Marks.

74.     Upon information and belief, Defendant is using the BORDERS Marks in bad faith and with specific intent to appropriate goodwill associated with the BORDERS Marks.

75.     By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, including interest, costs, and attorneys' fees.

19

76.    Defendant's conduct also threatens Plaintiffs with irreparable harm for which it has no adequate remedy at law.

## COUNT VI - TRADEMARK INFRINGEMENT -- LANHAM ACT -- 15 U.S.C. § 1114(1)

77.    Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated herein by reference as if set forth fully.

78.    Defendant's use in commerce of the registered BORDERS Marks including, without limitation, U.S. Registration Nos. 3,157,981 for "BORDERS REWARDS" and U.S. Registration No. 1,792,079 for "BORDERS," is likely to cause confusion, to cause mistake, or to deceive.  Defendant's conduct has already caused actual consumer confusion as to the source of goods and services offered by Next Jump in connection with the BORDERS Marks.

79.    Upon information and belief, Defendant used registered BORDERS Marks in bad faith and with specific intent to cause confusion, to cause mistake, or to deceive.

80.    By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, including interest, costs, and attorneys' fees.

81.    Defendant's conduct also threatens Plaintiffs with irreparable harm for which it has no adequate remedy at law.

## COUNT VII - TRADEMARK INFRINGEMENT -- LANHAM ACT -- 15 U.S.C. § 1125(A)

82.    Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated herein by reference as if set forth fully.

83.    Defendant's use in commerce of BORDERS- and BORDERS REWARDS-formative trademarks and service marks, including "Borders Rewards Perks" and "bordersrewardsperks.com," is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Next Jump with the Debtor or as to the origin, sponsorship, or approval of goods and services offered by Next Jump.  In addition, Defendant's

conduct has already caused actual consumer confusion as to the source of goods and services

offered by Next Jump in connection with the unregistered BORDERS Marks.

84.     By reason of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial, including interest, costs, and attorneys' fees.

85.     Defendant's conduct also threatens Plaintiffs with irreparable harm for which it

has no adequate remedy at law.

### COUNT VIII – VIOLATION OF SECTON 362 OF THE BANKRUPTCY CODE

86.     Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated

herein by reference as if set forth fully.

87.     On the Commencement Date, a stay went into effect pursuant to section 362 of

the Bankruptcy Code protecting the Debtors from, among other things, "any act to obtain

possession of property of the estate or of property from the estate or to exercise control over

property of the estate . . . ."

88.     Pursuant to section 541 of the Bankruptcy Code, on the Commencement Date, the

BRP Customer List and the BORDERS Marks became property of the Debtors' estates.

89.     Next Jump is improperly retaining possession of and using the BRP Customer

List in direct contravention of section 362 of the Bankruptcy Code.

90.     Next Jump is improperly infringing the BORDERS Marks in direct contravention

of section 362 of the Bankruptcy Code.

### COUNT IX – TURNOVER PURSUANT TO SECTION 542(a)<br>OF THE BANKRUPTCY CODE

91.     Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated

herein by reference as if set forth fully.

92.     The BRP Customer List is the property of the Debtors' estates pursuant to section

541 of the Bankruptcy Code.

93.    The Defendant is in possession, custody, and control of portions of the BRP Customer List.

94.    The BRP Customer List is of substantial value, benefit, and use to the Debtors' estates and the Debtors seek to sell the BRP Customer List in a sale pursuant to section 362 of the Bankruptcy Code.

95.    The Debtors have requested that the Defendant turn over the BRP Customer List and the Defendant has, to date, refused.

96.    By reason of the foregoing and pursuant to section 542(a) of the Bankruptcy Code, the Plaintiff is entitled to an order requiring the Defendant to turn over the BRP Customer List.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiffs request that the Court:

(1)    enter an order enjoining Next Jump from using the BRP Customer List in any way, including emailing persons on the BRP Customer List;

(2)    enter an order enjoining Next Jump from using any customer information derived from Next Jump's unauthorized solicitation of persons on the BRP Customer List in any way, including emailing persons who signed up with OO.com as a result of Next Jump's unauthorized solicitation of persons on the BRP Customer List;

(3)    enter an order enjoining Next Jump from using any of the BORDERS Marks, including operation of the website bordersrewardsperks.com;

(4)    enter an order requiring Next Jump to return the BRP Customer List to Borders and purge the BRP Customer List from Next Jump's systems, and verify that such has taken place;

(5)    enter an order requiring Next Jump to identify all uses of the BRP Customer List since July 20, 2011;

(6)    enter an order requiring that Next Jump disgorge any benefits that it has unjustly obtained;

(7)    grant Plaintiffs compensatory damages, including statutory damages for infringement of the registered BORDERS Marks;

(8)     grant Plaintiffs punitive damages for violation of the automatic stay and as
otherwise permitted by applicable law;

(9)     grant Plaintiffs such other and further relief as the Court may deem just and
appropriate, including the fees, costs, interest, and expenses of this action.

Dated: New York, New York
       August 31, 2011

                           KASOWITZ, BENSON, TORRES
                            & FRIEDMAN LLP

                           By: /s/ Jeffrey R. Gleit
                           David M. Friedman (DFriedman@kasowitz.com)
                           Andrew K. Glenn (AGlenn@kasowitz.com)
                           Jeffrey R. Gleit (JGleit@kasowitz.com)
                           1633 Broadway
                           New York, New York 10019
                           Telephone:  (212) 506-1700
                           Facsimile:   (212) 506-1800

                           *Attorneys for Plaintiffs*